UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                                  )<br>)<br>)<br>BRUCE SINGER                             ) | Criminal No. 17-cr-30007-MGM |

### UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS THE SEARCH WARRANT OF DEFENDANT'S HOME

The United States, by counsel, Alex Grant, Assistant U.S. Attorney for the District of Massachusetts, and Leslie Williams Fisher, Trial Attorney, United States Department of Justice, and responds to the defendant's Motion to Suppress Fruits of Unlawful Police Search of Defendant's Home and Memorandum in Support (hereinafter the "Motion"), and requests this Court deny the defendant's Motion in its entirety. In support of this response, the United States submits the following:

**I.        Factual Background**

In late 2014, the Easthampton Police Department (EPD) and the Northampton Police Department (NPD) began an investigation into a group of individuals located throughout Western Massachusetts (and elsewhere) who were engaging in the receipt, distribution, and possession of child pornography, and the direct sexual contact exploitation of at least one minor victim. *See* Affidavit of Mark Popielarczyk in Support of Search Warrant at 2-4, appended as Exhibit 1. In December 2014, EPD Detective Sergeant Mark Popielarczyk received information regarding a cyber tip submitted to the National Center for Missing and Exploited Children (NCMEC). Exh. 1 at ¶6. The cyber tip regarded an image believed to be child pornography that had been uploaded to a specific Facebook account. *Id.* That Facebook account was traced to an

individual residing in Easthampton, Massachusetts, and a search warrant was executed at his address. *Id.* at ¶¶ 10-11.  Through this investigation, law enforcement found that this individual was communicating via email with other individuals about having a sexual interest in children and was trading child pornography with other individuals. *Id.* at ¶11.

The investigation discovered that someone using a Hotmail email account sent images of child pornography to the individual in Easthampton on multiple occasions. *Id.* at ¶¶ 12-14.  An administrative subpoena was served on Microsoft for the Hotmail account, and Microsoft provided law enforcement with both an Internet Protocol (IP) address, owned by Charter Communications, used by that account as well as a backup email account. *Id.* at ¶¶ 15-17.  An administrative subpoena served on Charter revealed that the IP address used by the Hotmail account was assigned to the defendant, Bruce Singer, at his address in Southampton, Massachusetts. *Id.* at ¶18.  EPD conducted surveillance on the address, and determined through database inquiries that the defendant resided at the address. *Id.* at ¶¶ 21-22.

On June 25, 2015, law enforcement executed a search warrant on the defendant's residence in Southampton.  The warrant allowed for the seizure and search of the defendant's digital media devices for evidence of possession of and dissemination of child pornography. *See* Exhibit A to Def's Motion.  The search warrant affidavit, sworn to by Detective Sergeant Popielarczyk, contained all of the above-stated facts of the investigation as well as information regarding Detective Sergeant Popielarczyk's training and experience, a description of the characteristics of individuals who possess and trade child pornography, and the typical use of the internet and digital media devices by those individuals to seek out, trade, and store child pornography. *See* Exhibit 1.

**II.     Argument**

    **A.     The Search Warrant Was Not Overly Broad**

The defendant argues that the search warrant for his house was overly broad because it allowed seizure of "virtually every electronically stored item" in the home. Dkt. No. 61 at 3. However, the First Circuit has found that a search warrant authorizing the seizure of computer equipment and electronic storage media for a later, off-site search is not overly broad as long as the probable cause showing establishes a "sufficient chance of finding some needles in the computer haystack." *United States v. Upsham,* 168 F.3d 532, 535 (1st Cir. 1999); *see also United States v. Burdulis,* No. 10–40003–FDS, 2011 WL 1898941 at *5 (D. Mass. May 19, 2011) (unpublished) (finding that search warrant authorizing seizure and search of all objects capable of storing digital data for evidence of child exploitation crimes was not overbroad). Upsham, like the defendant here, was suspected of crimes involving child pornography, and a search warrant was issued that allowed for the seizure and search of any and all of his computer software and hardware, computer disks, disk drives, and any and all visual depictions, in any format or media, of minors engaging in sexually explicit conduct. *Upsham*, 168 F.3d at 535. Upsham challenged the warrant as being too "generic." The First Circuit upheld the warrant, stating:

> As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images. A sufficient chance of finding some needles in the computer haystack was established by the probable-cause showing in the warrant application; and a search of a computer and co-located disks is not inherently more intrusive than the physical search of an entire house for a weapon or drugs.

*Id*; *see also, e.g., United States v. Ivers*, 430 F. App'x 573 (9th Cir. 2011) (unpublished) (search warrant for all of the electronic storage devices in the defendant's possession was not overbroad

3

because while the government knew the defendant received child pornography images, it did not know in advance where the images would be stored).

The affidavit in support of the search warrant for the defendant's home thoroughly establishes probable cause to believe that evidence of child pornography possession and dissemination would be found on the defendant's digital devices. The search warrant affidavit explains the pertinent facts of the investigation, including the fact that the affiant received information regarding a cyber tip from NCMEC involving an image of child pornography that had been uploaded to a Facebook account. Exh. 1 at ¶6. The investigation into that cyber tip led law enforcement to an individual who, upon further investigation, was found to be communicating about and exchanging child pornography via the internet with another individual using a Hotmail email account. Exh. 1 at ¶¶ 12-14. That Hotmail account was found to belong to the defendant. Exh. 1 at ¶¶ 15-18. The affidavit ties both the Hotmail account used to trade child pornography to the defendant, and the defendant to the particular home to be searched. The swearing officer himself reviewed the images of child pornography sent by the defendant and, based on his training and experience, he believed them to depict real persons under the age of 18, posed in a "lewd exhibition of the unclothed pubic area." Exh. 1 at ¶23. The content of the images are described. *Id.*

The affidavit also explains the habits of individuals who view and trade child pornography online, and the fact that these types of images can be stored on various digital media. Exh. 1 at ¶24. The affidavit specifically states that "[p]ersons trading in, receiving, distributing or possessing images or movies involving child pornography will make copies of those files on their digital media device's hard drive or other removable media." Exh. 1 at ¶24(B). These storage devices can be and have been found within the person's residence, on the

person, and within their motor vehicles." *Id.* The affidavit also states that individuals who trade in child pornography "often communicate with others through correspondence or other documents (whether digital or written) which could tend to identify the origin of the images as well as provide evidence of a person's interest in child pornography or child exploitation." Exh. 1 at ¶24(D). The affidavit further explains that individuals with a sexual interest in children will use the internet to search for child pornography files, and that the "searches can be found within Internet history files, such as Internet Explorer History, or within unallocated areas of the digital storage unit." Exh. 1 at ¶24(E).

Based on the above, in this case, as in *Upsham,* a search warrant allowing for the seizure and search of all of the defendant's digital media devices was the narrowest definable search and seizure reasonably likely to obtain the images. The probable cause showing in the search warrant affidavit supports sufficient chance of finding "some needles in the computer haystack." The affidavit provides ample probable cause that the defendant was possessing and distributing child pornography and that evidence of his possession of and distribution of child pornography would be found on the digital media devices found in his home.

The search warrant terms were not overly broad, and the defendant does not suggest how Addendum A, the items to be searched, should have been narrower. *See United States v. Rarick*, 636 Fed. Appx. 911, 914 (6th Cir. 2016) ("the degree of specificity is flexible and will vary depending on the crime involved and the types of items sought") (citing *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001)). The defendant does not contend, nor could he, that the various categories of digital devices and digital media described in Addendum A lacked the capacity to contain the images that were being sent from Singer's email account. The affidavit also provided a basis, based on Singer's interest in trading child pornography and the

5

characteristics of child pornography offenders, *see* Exhibit 1 at ¶24(A), to believe that Singer had other images of child pornography which had not been sent from the email account.  Any of the digital devices and media set forth in Addendum A could have stored child pornography, and it was not feasible, prior to executing the search warrant to know which of them contained child pornography and which of them did not.  And even if the search warrant was overbroad, which it was not, the remedy is not wholesale suppression of all evidence seized, but rather the "infirm portions," which Singer does not identify.  *See Rarick*, 636 Fed Appx. at 915.  Instead, Singer complains about the digital devices and media which could have stored, and did store, child pornography.  In other words, he takes aim at the devices and media for which probable cause clearly existed.  Singer's argument for suppressing all evidence seized from his house is meritless.

      **B.**    **The Good Faith Exception Applies**

Even if the search warrant was overbroad, which it is not, the evidence obtained from its execution should not be suppressed as law enforcement relied on it in good faith.

The exclusionary rule is a judicially created remedy that, "when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139, (2009). The Supreme Court has "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." *Id*. at 141.  The exclusionary rule "applies only where it 'result[s] in appreciable deterrence,'" and where the benefits of deterrence outweigh the costs.  *Id*. (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)) (internal citations omitted).  Moreover, "[t]he extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct." *Id*. at 135.

To trigger the exclusionary rule, police conduct must be sufficiently deliberate that

6

exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. Here, law enforcement reasonably relied upon the warrant, and as such acted in good faith. There is simply no evidence to the contrary.

## CONCLUSION

Based on the above, the defendant's Motion to Suppress should be denied.

Respectfully submitted,

ANDREW E. LELLING
UNITED STATES ATTORNEY

By:   /s/ *Alex J. Grant*
Alex J. Grant
Assistant United States Attorney

Leslie Fisher
Trial Attorney, U.S. Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Alex J. Grant*
ALEX J. GRANT
Assistant United States Attorney

7